PATRICK GALLAGHER, Respondent, *v.* MATTHEW BAIRD, Appellant.

*Contract to furnish granite — when an architect's certificate is a condition precedent to payment — forfeiture clause applicable only to a delay, not to an abandonment of the contract — measure of damages for an abandonment.*

Where a contract, by which the party of the first part agrees to furnish the party of the second part with all the granite needed in the performance of a contract made by the latter with the city of New York, provides that before any payment shall become due the party of the first part shall furnish to the party of the second part a certificate in writing of the supervising architect, approving of the quantity and quality of the material furnished, and that eighty-five per cent of the value of the work delivered, when set as per such certificate, should be paid once a month, the balance when all the said granite work should be completed, the presentation of the architect's certificate is a condition precedent to an effectual demand for payment under the contract.

A clause in the contract that "In case the said party of the first part shall fail to fully and entirely * * * complete within the time hereinbefore limited for such completion or delivery * * * the said party of the first part shall and will pay to the said party of the second part the sum of fifty dollars for each and every day that the said party of the first part shall be in default," contemplates a delay in the completion of the work, and does not provide the measure of damages in the event of the utter abandonment of the contract.

Where the party of the first part abandons the contract after partially completing the same, and granite of the same quality and color as that which has already been used cannot be procured in the open market, but only in two quarries, one of which the party of the second part leases and opens and procures therefrom the necessary stone, the measure of damages in an action brought against the surety on the bond given to secure the faithful performance of the contract by the party of the first part, is the expense thus incurred by the party of the second part to the extent of the penalty of the bond.

Appeal by the defendant, Matthew Baird, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 30th day of October, 1899, upon the report of a referee.

*Joseph Fettretch*, for the appellant.

*Peter B. Olney*, for the respondent.

Hatch, J. :

The damages recovered in this action were for the breach of the conditions of a joint and several bond executed by the defendant, Matthew Baird, together with the Sargent Granite Company, to the plaintiff in the penal sum of $6,000.

The condition of the bond was that the Sargent Granite Company should well and truly perform the stipulations and agreements in a contract made by it with the plaintiff to furnish all the granite for the erection of the armory building on Fourth avenue, in this city, cut, fitted and ready to set, and deliver the same on a certain dock in New York city. The granite was to be furnished in conformity to and in pursuance of an agreement between the plaintiff and the mayor, etc., of the city of New York, by the armory board of said city, and the plans, drawings and specifications attached thereto ; and such contract, plans, drawings and specifications were, so far as they or either of them referred to the work or material, or either, therein mentioned, made a part of the contract between the plaintiff and defendant, for the faithful performance of which the bond in question was executed. The contract further provided that the work of furnishing the granite should be commenced within seven days from its execution, and the furnishing and delivery should be completed within eight months from the 1st day of May, 1892. And the granite company further agreed therein that, before any payment should be due or become due, it should furnish to the party of the second part, this plaintiff, a certificate in writing of the supervising architect approving of the quantity and quality of the material furnished, and that eighty-five per cent of the value of the work delivered, when set as per such certificate, should be paid once a month, the balance when all the said granite work should be completed. And it was provided that, in case the granite company failed to fully

perform the same in conformity with the provisions and conditions of the agreement, and complete the same within the time limited therefor, it should pay to the plaintiff the sum of fifty dollars for each and every day that it should be in default, which sum was agreed upon as the damages which the party of the second part would suffer by reason of such default, and not by way of penalty.

The contract made between the plaintiff and the city required all of the cut stone trimmings to be of quarried stone from Manhattan island or Connecticut, or of granite from such quarry and of such color as the architect should approve, and that all of the stone for exterior work should be of like stone, or of granite, and of such quality and color as would meet the approval of the architect, and contained the same provision as to time and conditions of payment as did the contract between the granite company and plaintiff, viz., that eighty-five per cent of the value of the work delivered, when set as per architect's certificate, should be paid once a month, and the balance when all the granite work should be completed. By the terms of this contract the armory was to be completed within eighteen months from the 11th day of March, 1892, and damages for failure were stipulated at fifty dollars per day.

The Sargent Company failed to commence the work within the time limited by the contract, *i. e.*, within seven days after the 1st of May, 1892, and no granite was delivered by it until about August 1, 1892. Repeated complaints were made by the architect to the plaintiff and by the plaintiff to the Sargent Company for this failure, and the company was requested repeatedly to hurry up the work. It is admitted that the said company did not finish and complete the work within the eight months as covenanted by it.

After having furnished a quantity of the granite contracted for on or about the 14th day of November, 1892, this defendant, who, in the meantime, had become the assignee of the rights of the Sargent Company under its contract with plaintiff, and of the money due and to grow due thereon, and had taken possession of the quarry from which the granite was obtained, made a demand upon the plaintiff for the payment of $10,000 or $11,000 under the contract.

The plaintiff refused to pay the sum demanded, on the ground that no such amount was due under the terms of the contract, but

offered to pay what was due upon proper application being made. It was represented to the plaintiff that the money asked for was needed to pay the employees of the company, particularly for their work on the armory contract. The plaintiff declined to make any advance. After negotiations between the parties, the plaintiff still refusing to make the advance upon the terms required by the defendant, the defendant said he would shut down the quarry unless his terms were complied with, and shortly after that, in the month of November, the quarry was shut down by defendant and work on the Sargent contract was stopped. The defendant never completed the contract nor tendered performance.

It is conceded that no certificate of the architect showing his approval of the quantity and quality of the material furnished was procured or presented by the defendant when his demand for money was made, but it is contended that plaintiff waived the production of such certificate, for the reason that he had himself procured the certificate, and that he did not put his refusal upon that specific ground, nor himself suggest that such certificate was required or would be demanded. But there was, concededly, a *bona fide* dispute as to what amount was due upon the contract, and if a technical demand was to be relied upon, it should have been made in the method required by the contract, as there was no other way than by the architect's certificate to ascertain the amount due. The certificate furnished by the plaintiff to the city on receiving payments does not certify with respect to the quantity or value of the granite work as required by the Sargent contract, but embraced the value of the granite cut and set in the building, which, of course, included the cost of transportation, for work in setting it, and for the labor and expense of the material used. The granite company should have obtained a certificate showing the granite cut and fitted ready to set, and delivered at the company's expense on the dock at New York, and only after such granite was set in the building was the certificate to be given. At the time of the demand some of the granite was in transportation.

After the defendant stopped work on the contract the plaintiff sought to obtain the granite necessary for the completion of the armory in the open market. The building having been partially

constructed of this particular kind and color of granite, it was necessary for the plaintiff to procure other of the same quality and color, and such as would meet the approval of the architect, as required by his contract. He was unable to find the required article in the open market, and could find only two places where the same could be produced, viz., the quarry known as the "Mount Tuck" and the "Mount Waldo" quarries, both in the State of Maine. The Mt. Tuck quarry had not been opened, and the Mt. Waldo was so situated as to be inaccessible in winter, it being on an inlet of the main river which freezes up. Under these conditions, being obliged to secure promptly the granite to finish his contract, the plaintiff leased and opened the Mt. Tuck quarry. In so opening and procuring the granite from this quarry he necessarily expended, including freight paid on the granite so obtained and on certain cargoes shipped by Sargent & Co., which charges he was obliged to pay to obtain the granite, about the sum of $58,000.

It appears that the plaintiff used diligence and care in his efforts to procure the granite in open market, and made all reasonable efforts to diminish the damages. His operations in procuring the granite were made necessary by the failure of the defendant to perform his contract and the special circumstances of the case, and it does not appear but that his work was economically conducted. His real damages were two or three times the penalty of the defendant's bond, but his recovery has been limited to the sum stipulated, with interest.

Upon these facts three questions have been presented and argued in this court which substantially resolve themselves into :

*First.* That there was no breach of the contract to furnish the granite.

*Second.* That the architect's certificate was not required as a condition precedent to payment upon the contract, or, if so, it was waived.

*Third.* That an improper measure of damages was adopted as a basis for the recovery.

It is clear from the foregoing statement of facts that not only was there a breach of the contract, but there was a complete abandonment of it. For this act there was no justification. When the demand for money was made it was not for the sum due upon the

contract, but was, in substance, a demand for an advance of money to be thereafter repaid by the fulfillment of the contract. The plaintiff was not bound to respond to such demand; he in fact did all and more than was required, as he offered to pay all that was then due or for which a demand could be properly made. By the express provisions of the contract it was a condition precedent to payment that the architect's certificate, in writing, should be obtained and presented, approving the quantity and quality of the material furnished, and no payment should be due or become due until compliance was had with the contract in this respect. It is not pretended that the Sargent Company or the defendant made compliance with the contract in this regard, or that any architect's certificate was obtained at any time. This being a condition precedent to payment, no demand could be made which would place the plaintiff in default so long as he did nothing to prevent the delivery of the certificate and did not by act or word waive the provision. (*Weeks* v. *O'Brien*, 141 N. Y. 199.) No waiver of this clause of the contract is shown by the proof. Indeed, it clearly appeared that the demand for payment was not of the sum due, but for more than the sum which could be due. So that this demand could not possibly have placed the plaintiff in default for more than the amount earned under the contract, whether the architect's certificate was produced or not, and this sum plaintiff offered to pay. In no view, therefore, does the Sargent Company or the defendant justify the abandonment of the contract.

It is said that the liquidated damages for which the contract made provision furnished the measure of damage. But this clause relates to delay in completion of the contract; its language so shows. "In case the said party of the first part shall fail to fully and entirely * * * complete within the time hereinbefore limited for such completion or delivery * * * the said party of the first part shall, and will, pay to the said party of the second part the sum of fifty dollars for each and every day that the said party of the first part shall be in default." It is manifest that this clause contemplated a completion of the contract with damages for delay. There was no completion or attempt to complete, but an utter abandonment, and such clause was not intended to cover such a case, nor was provision made in the contract for such a contingency. The defendant's

position, in this respect, is the same as the company's. He can certainly occupy no better position.. (*Smith* v. *Molleson*, 148 N. Y. 241, 246.) The contract may not, therefore, be regarded as furnishing the basis for the measure of damage to which plaintiff is entitled. The measure of damage which was adopted by the learned referee authorized a recovery, to the extent of the bond, for the actual cost of supplying the granite which the plaintiff legitimately incurred. This rule we think is correct. Ordinarily the measure of damage for breach of contract to furnish an article is the difference between the contract price and the market price of the article at the time and place of delivery. But there are special features involved in this case which render such rule inapplicable. The granite company had agreed to furnish, as the contract between the plaintiff and the city required, granite of such quality and color as would meet the approval of the architect. A part of the structure was completed with the granite already furnished, and it became necessary for the plaintiff, in order to meet the requirements of his contract, to procure granite of the same quality and color as that which had already been used, in order to meet the approval of the architect. In addition to this the stone was required, to be in compliance with certain specifications, to be dressed in a certain manner and fit a particular place. Manifestly there could be no open market for the supply of the particular stone. No dealer dealt therein as no stone was required for general use according to the special design of size, dressing and color. The evidence shows that there was no open market for this particular article. And it also shows that to obtain the stone only two quarries were available. One of these was not accessible in winter and the other was unopened. In order to obtain the stone which the company had already shipped the plaintiff was required to pay freight, and in order, practically, to obtain the granite answering the requirements he opened the quarry. The expense which he necessarily incurred in performing this act, the payment of the freight and the expense of dressing the stone, were all elements in determining the cost of completing the contract, and this cost, as applicable to the facts of the present case, furnishes the true measure of damage. (*Forsyth* v. *Mann Bros.*, 68 Vt. 116 ; *Masterton* v. *Mayor*, 7 Hill, 61 ; *Todd* v. *Gamble*, 148 N. Y. 382 ;

*Parsons* v. *Sutton*, 66 id. 92 ; *Saxe* v. *Penokee Lumber Co.*, 11 App.
Div. 291 ; *Miller* v. *Stern*, 25 Misc. Rep. 690.)

The testimony is abundant to show that the plaintiff exercised
diligence and care in procuring the granite, and made all reasonable
efforts to diminish the damage sustained ; and it is clear that under
the proof he sustained much larger damages than is measured by
the penalty of the bond.

There are no other questions which require discussion. As we
think the judgment below is correct, it should be affirmed, with
costs.

VAN BRUNT, P. J., PATTERSON, O'BRIEN and INGRAHAM, JJ.,
concurred.

Judgment affirmed, with costs.