SOLOMON EHRENWORTH, Appellant, *v.* GEORGE F. STUHMER & CO., INC., Respondent.

Contract — sales — agreement of defendant to furnish to a retailer all of a certain manufactured product to be sold in a designated district — whether agreement constituted a continuing contract binding defendants and their successors and amount of damages for a breach thereof questions for the jury — evidence — when weekly profit from sales properly allowed in evidence as a basis of damages for breach of contract.

1. Judgment upon a verdict in favor of the plaintiff having been reversed on the law and the complaint dismissed by the Appellate Division solely on the ground that the contract alleged by the plaintiff lacked mutuality, this court is required to examine the evidence, taking the view most favorable to the plaintiff.

2. Defendant's predecessor and the defendant were desirous of obtaining a market for the particular kind of bread known as "pumpernickel" or black bread which they manufactured, and considered that plaintiff would be able to create and maintain such a market for

it and build up their trade in this particular bread. In order to accomplish this, it was agreed that the .plaintiff should purchase and the defendant should sell all the black bread which the plaintiff required upon his route and should pay therefor a price one cent less than the wholesale price and two cents less than the retail price. The contract was to last as long as both parties were in business and was assumed by the corporation when it was organized to carry on the old business under corporate form. This agreement has every element of a contract. The article to be sold or dealt in; the duration of the contract and the price to be paid for the article supplied. The quantity to be furnished was measured by that required upon the route specified. The defendants, having succeeded in business, established a large bakery and began to transact the business directly, which plaintiff alleges was in violation of his contract, for the breach of which he claims and has recovered damages in this action. *Held*, on examination of the evidence, that it was a question of fact, and having been presented to the jury, the verdict should have been permitted to stand.

3. Ordinarily the plaintiff would be required to purchase, in order to reduce the damage, the article in question if it could be purchased, but where he cannot do so and it is a branded article or where no substitute may be bought, as appears by the evidence and found by the jury, the rule is inapplicable. Hence, the plaintiff was properly allowed· to show the weekly profit from the sales of the bread as a basis for the recovery of damages.

*Ehrenworth* v. *Stuhmer & Co.*, 181 App. Div. 939, reversed.

(Argued May 5, 1920; decided June 8, 1920.)

APPEAL from a judgment entered December 12, 1917, upon an order of the Appellate Division of the Supreme Court in the second judicial department, reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Joseph Gans* and *C. Arthur Jensen* for appellant. It was error for the Appellate Division to reverse the judgment and to dismiss the complaint. The order of reversal being silent as to the facts, this court must conclusively presume that the facts were examined and the findings

of the jury in favor of the plaintiff approved by the Appellate Division. (*Gilhooley* v. *Burgard*, 225 N. Y. 445; *Bragg* v. *C. N. E. Ry. Co.*, 228 N. Y. 54; *Melcher* v. *Ocean A. & G. Co.*, 226 N. Y. 51; *Faber* v. *City*, 213 N. Y. 411.) If the language of the plaintiff fell short of an actual promise, which, however, is not conceded, is not the promise implied in law from the language, acts and conduct of both parties? (*Barton* v. *McLean*, 5 Hill, 256; *Baldwin* v. *Humphrey*, 44 N. Y. 609; *Richards* v. *Edick*, 17 Barb. 263; *Jugla* v. *Trouttit*, 120 N. Y. 21; *Wood* v. *Duff-Gordon*, 222 N. Y. 88; *City of New York* v. *Delli Paoli*, 202 N. Y. 18; *Fuller & Co.* v. *Schrenk*, 58 App. Div. 222; 171 N. Y. 671; *Baker Transfer Co.* v. *Merchants' Refrigerating Co.*, 1 App. Div. 507; *Wilson* v. *M. O. Co.*, 170 N. Y. 542; *Genet* v. *D. & H. C. Co.*, 136 N. Y. 608.) The plaintiff's promise to stop selling any other manufacturer's pumpernickel on his route was a direct and sufficient consideration for the defendant's promise to sell their pumpernickel exclusively to plaintiff for the territory of East New York and Brownsville. (*Grossman* v. *Schenker*, 206 N. Y. 466.) The facts proved which were believed by the jury (and the finding on the facts was not disturbed by the Appellate Division but approved by it) warranted the trial court to infer a promise by plaintiff to give up the sale of all pumpernickel except Stuhmer's; likewise a promise to sell Stuhmer's pumpernickel exclusively, likewise a promise or agreement to buy Stuhmer's pumpernickel in such quantities as were needed by his customers; and further, that plaintiff relied on defendant's promise to give him their sole agency on condition that he should give up the sale of all other pumpernickel, and on the strength of that promise plaintiff had changed his position by abandoning the sale of other pumpernickel and creating a market for and establishing the brand of pumpernickel manufactured by defendant. (*Buffalo* v. *Balcom*, 134 N. Y. 532; *Mayor* v. *Sonneborn*, 113 N. Y. 423; *B. G. L. Co.* v.

*Cluffy*, 151 N. Y. 24; *W. L. Ins. Co.* v. *Classon*, 162 N. Y. 305; *Vought* v. *E. B. & L. Assn.*, 172 N. Y. 508; *Trambloy* v. *Supreme Council*, 90 App. Div. 39; *McVity* v. *Albro Co.*, 90 App. Div. 109; *Melcher* v. *Ocean A. G. Co.*, 226 N. Y. 51; *Faber* v. *City*, 213 N. Y. 411; *Gilhooley* v. *Burgard*, 225 N. Y. 445.) There was sufficient evidence before the jury from which it could compute the value of plaintiff's contract and the damages sustained by the defendant's breach. (*Gilhooley* v. .*Burgard*, 122 N. E. Rep. 257; *Melcher* v. *Ocean Acc. & G. Co.*, 226 N. Y. 51; *Faber* v. *City of N. Y.*, 213 N. Y. 411; *Ruback* v. *McClay*, 220 N. Y. 188; *Deyo* v. *Hudson*, 123 N. E. Rep. 851.)

*Harry W. Kouwenhoven* for respondent. Plaintiff has failed to state and prove facts sufficient to constitute a cause of action. The alleged contract between plaintiff and defendant is void and unenforcible for lack of mutuality and consideration, and because of its indefiniteness. (*Leach* v. *Kentucky B. C. Coal Co.*, 256 Fed. Rep. 686; *C. B. Transp. Co.* v. *Kansas City B. & N. Co.*, 114 Fed. Rep. 77; *Goodyear* v. *Koehler Sporting Goods Co.*, 159 App. Div. 116; 220 N. Y. 749; *Chicago & Great Eastern Ry. Co.* v. *Dane*, 43 N. Y. 240; *White* v. *Kingston Motor Car Co.*, 69 Misc. Rep. 629; *Sigsbee* v. *New Era Mfg. Co.*, 95 Misc. Rep. 579; *U. P. Co.* v. *N. Y. P. Co.*, 164 N. Y. 406; *Lambent* v. *Hays*, 136 App. Div. 574; *Grossman* v. *Schenken*, 206 N. Y. 466.) The relationship was strictly that of vendor and vendee under an executory contract of sale. There was no element of agency or employment in it and the plaintiff's alleged or implied promise was merely incidental to the contract of sale and insufficient to support a consideration. (*Jackson* v. *A. P. Cement Co.*, 122 App. Div. 345; *Santaella & Co.* v. *Lange Co.*, 155 Fed. Rep. 719.) It was the duty of the plaintiff to lessen damages caused by the alleged breach of contract. (*Parsons* v. *Sutton*, 66 N. Y. 92; *Saxe* v. *Penokee Lumber Co.*, 159 N. Y. 371; *Stecker* v. *Weaver*,

116 App. Div. 772.) Plaintiff failed to present proof to form any basis by which damages could be measured, and the award of damages by the jury was excessive and against the weight of evidence. (*Pressed S. C. Co.* v. *U. P. R. R. Co.*, 254 Fed. Rep. 316; *R. L. Co.* v. *S. & P. P. Co.*, 135 N. Y. 209; *Reisert* v. *City of N. Y.*, 66 App. Div. 306; *Westfield* v. *Fargo*, 80 Misc. Rep. 40; *Brainerd* v. *State of N. Y.*, 74 Misc. Rep. 100, 110; Sutherland on Damages [4th ed.], 3, 1508, § 459.)

ELKUS, J. The judgment upon the verdict in favor of the plaintiff having been reversed on the law and the complaint dismissed by the Appellate Division solely on the ground that the contract alleged by the plaintiff lacked mutuality, we are required to examine the evidence, taking the view most favorable to the plaintiff. (*Melcher* v. *Ocean Accident & Guarantee Corpn.*, 226 N. Y. 51; *Faber* v. *City of New York*, 213 N. Y. 411.)

In 1907 the plaintiff was a dealer in bread with an established trade or route for the delivery or sale of bread in that part of the borough of Brooklyn in the city of New York which is popularly known as Brownsville and East New York. At that time George F. Stuhmer and Emil S. Brykozynski were copartners engaged in business in Manhattan, New York, in baking and selling bread including a particular kind of black bread known as " pumpernickel."

The plaintiff claims that in 1907 he entered into an agreement with the copartnership of Stuhmer & Co. by which it was agreed that he was to sell this particular kind of black bread, manufactured by the then copartners of Stuhmer & Co., exclusive of all other black bread, and that, in consideration of the plaintiff's refraining from selling any other black bread to his customers along his established route that Stuhmer & Co. were to sell and furnish him with as much of such black bread as the plaintiff would require for his customers as long as the

plaintiff and Stuhmer & Co. remained in business at a price of at least one cent per loaf below the market price to wholesalers and two cents per loaf below the market price at which it was customary to sell at retail and also that Stuhmer & Co. would not sell such bread to any person other than the plaintiff within this territory; Stuhmer & Co. would supply the plaintiff with as much bread as he required at such prices. This contract was to last as long as the plaintiff and the copartnership were to be in business.

This conversation embodying the contract took place in the early spring or summer of 1907. Brykozynski, with whom the plaintiff had his conversation, told the plaintiff he would have to consult his partner and thereafter he was told he would receive such a contract if the plaintiff would agree not to sell any other black bread on his route. To this plaintiff assented and thereupon in pursuance of the terms of this contract, business was begun between the plaintiff and the defendant.

In 1908 the copartnership of George F. Stuhmer and Emil S. Brykozynski was incorporated under the name of George F. Stuhmer & Co., Inc., under the laws of the state of New York and this corporation took over all the assets of the copartners and assumed all its liabilities, including the agreement with the plaintiff, and the copartners own all or substantially all of its capital stock and were and are its officers and managers.

The plaintiff, immediately after making the agreement, ordered fifty or sixty loaves of bread and paid a deposit of $5 which thereafter was increased to $50, and the plaintiff claimed he received a receipt for such $50 which was not produced, which it is claimed stated upon its face that it was security for the contract above specified.

The plaintiff and the copartnership and later the defendant carried out the provisions of this agreement from its inception in 1907 to March, 1915. During this time the business transacted increased rapidly so that in

March, 1915, the plaintiff was purchasing and receiving from the defendant three thousand loaves of black bread of the kind specified each week.

In the meantime the defendant had moved its bakery to the borough of Brooklyn. In March, 1915, the defendant caused an advertisement or statement to be inserted in the weekly grocery paper in Brooklyn that it intended to sell its black bread directly. It also caused agents to be sent to customers of the plaintiff agreeing to deliver such bread direct. When the plaintiff expostulated and claimed that this was a breach of their contract, Mr. Stuhmer, one of the defendant's officers, said they intended to send their own wagons and sell and deliver their own bread, and after that the defendant refused to deliver bread to the plaintiff at the prices specified.

It appears by the uncontradicted evidence that, at the time the contract was made, Stuhmer & Co., the copartnership, were carrying on a small business using a few ovens; this business increased during the eight years of the association between the plaintiff and the defendant to a very substantial enterprise. The plaintiff corroborated his testimony as to his contract not only by the course of dealing during all the years, but also by the testimony of a witness (Nathan Ehrenworth) that the plaintiff had been offered $3,000 for his business and upon this being communicated to the defendant or one of its officers that the defendant, after being informed of this, advised the plaintiff through the witness not to sell the same because he had the contract in question and that he would make far more money by carrying out his contract than by disposing of his route.

The contract was also corroborated by the testimony of the wife of the plaintiff who appears to have been helping the plaintiff in his business and who, after the contract was broken, had a conversation over the telephone with Stuhmer, the president of the defendant, in which she reproached him for breaking the contract with

1920.]                Opinion, per ELKUS, J.                [229 N. Y.]

her husband, referring at some length to the terms of the contract. According to her, Mr. Stuhmer did not deny the making of the contract nor his breach of it, but simply said he could get more money by selling the bread direct, and when reproached that he had made the contract he said he could not help that, but that the company decided to take the bread away from the plaintiff and send their own wagons. At the end of the conversation, Mrs. Ehrenworth testified that Stuhmer said that his company might give the plaintiff a few hundred dollars because of their breach of the contract.

One Katz, who was also in the bread business, testified that while the plaintiff was purchasing and receiving the black bread from the defendant he endeavored to purchase such black bread from defendant to sell in East New York and Brownsville, but that Stuhmer said to him that he could not do this because he must sell altogether through the plaintiff.

On the part of the defendant, both Stuhmer and Brykozynski, who had been the copartners of the copartnership of Stuhmer & Co. and who were the substantial owners of the corporation, testified denying the making of the contract but conceded that business had been transacted between the plaintiff and the defendant substantially as claimed by the plaintiff, although without any agreement therefor, the purchases being ordinary ones, and also conceding that they did not sell through any peddler, except the plaintiff, in Brownsville and East New York. Mr. Stuhmer denied emphatically the conversation with Mrs. Ehrenworth except that he admitted that he had told her the defendant was willing to pay several hundred dollars to plaintiff.

The plaintiff proved his damages to be $45 per week loss of profits. This was disputed, it being claimed that the profits were gross and not net profits and testimony was taken to show the reduction which should be made therefrom.

It appears that the bread in question was labeled "Stuhmer's bread," and it was asserted without contradiction that the bread had become widely known throughout the specified district by that name and had a substantial market and the plaintiff offered testimony showing that no other bread could be purchased to take its place. It appeared that at one time during the course of dealings between the parties a competitor delivered to customers another bread called "Steam Bread," but after much effort and informing the trade of the difference between the two breads this competition was shown to be without merit.

All the elements of a contract are present. Stripped of all verbiage, it is quite clear that the defendants' predecessor and the defendant were desirous of obtaining a market for the particular kind of bread known as "pumpernickel" or black bread which they manufactured and considered that plaintiff would be able to create and maintain such a market for it and build up their trade in this particular black bread. In order to accomplish this, it was agreed that the plaintiff should purchase and the defendant should sell all the black bread which the plaintiff required upon his route in East New York and Brownsville and should pay therefor a price one cent less than the wholesale price and two cents less than the retail price. The contract was to last as long as both parties were in business and was assumed by the corporation when it was organized to carry on the copartnership business under corporate form. We thus have every element of a contract. The article to be sold or dealt in; the duration of the contract and the price to be paid for the article supplied. The quantity to be furnished was measured by that required upon the route specified. That the contract was easy of execution is shown by the fact that it was substantially carried out by both parties for a period of eight years, apparently to their mutual advantage. Then, it appears, the defendants, having succeeded

in business, established a large bakery in Brooklyn in, which the route of the plaintiff was located, and began to transact the business directly.

There is nothing new in. this situation of relations begun when both parties were transacting business in a small way and then both parties succeeding, so that the demands and the business went far beyond what was expected when a contract was made. Whether the contract was made was a question of fact for the jury, but that there was evidence of mutuality, consideration and subject-matter the facts presented distinctly show.

The trial court, after submitting the evidence to the jury, presented in a clear, concise charge, which indicates the presentation of complex facts to the jury in such a manner as would make the issues clear and place in a high light the questions of fact which the jury was to decide — that is, whether or not there was a contract between the plaintiff and the defendant, and what the contract was, and whether, if the contract had been broken, the breach caused damage and the amount of the damage.

It is contended that there was no express promise to purchase any particular amount of the black bread, but this promise, even if it be not expressed, is implied. The plaintiff impliedly, if not expressly, agrees to buy all the black bread which he can use on his route, and to purchase it from no other. The latter is clearly expressed. Every detail of a contract need not be specifically expressed. The law takes a broader view of what must be contained in a contract. All the circumstances which go to make up this contract are instinct with an obligation to purchase even though it may be imperfectly expressed. (*Wood* v. *Duff-Gordon*, 222 N. Y. 88; *McCall Co.* v. *Wright*, 133 App. Div. 62; *Moran* v. *Standard Oil Co.*, 211 N. Y. 187, 198; *City of New York* v. *Delli Paoli*, 202 N. Y. 18, 22, 23; *Wilson* v. *Mechanical Orguinette Co.*, 170 N. Y. 542; *Wells* v. *Alexandre*, 130 N. Y. 642; 13 Corpus Juris, Contracts, 271, sec. 62.)

It is claimed that the contract might be interminable because under its terms it was to last as long as the plaintiff and defendant were in business, but this might well be less than a man's lifetime and this court has had no difficulty in approving contracts made to last through the life of one of the parties. (*Ga Nun* v. *Palmer*, 202 N. Y. 483; 216 N. Y. 603, 607; *Schwarz* v. *Regensburg*, 227 N. Y. 568; *Schell* v. *Plumb*, 55 N. Y. 592.)

In *Ga Nun* v. *Palmer* (202 N. Y. 483; 216 N. Y. 603, 607, 609, 610) this court sustained a contract in which the plaintiff promised to care for the defendant's testatrix for life in consideration of a promise to pay the plaintiff $70 a week and leave her a legacy of $20,000.

In *Schwarz* v. *Regensburg* (227 N. Y. 568) this court sustained a contract in which the defendant promised to pay the plaintiff's testator $5,000 a year for life on his promise not to compete with the defendants in business.

We are not called upon to decide the reasonableness or unreasonableness of contracts which parties make, except as that bears upon the possiblity or probability of the making of such contracts. It is not unlikely, in view of all the circumstances, that the contract in question might well have been made between the parties. In any event, it was a question of fact, as we view it, for the jury to decide and, all the questions of fact having been presented to the jury, it is our opinion that the verdict of the jury should have been permitted to stand.

It is urged also that there was insufficient evidence, if there was a breach of the contract, from which the damages sustained by the plaintiff could be ascertained.

It appears that during the years just prior to the breach, the plaintiff sold on an average of between three and four thousand loaves of black bread each week; 1,500 loaves to grocers and 1,500 to peddlers; the quantity had been increasing from year to year since the plaintiff began selling the defendant's bread. The plaintiff sold half of this bread at eight cents per loaf and half at nine cents

and paid the defendant seven cents for each loaf. By computation, this represented a weekly profit of $45. This was not disputed, but the question was raised as to whether this was a net profit, and the jury heard the evidence of the defendant and the plaintiff with reference thereto.

The defendant claims that the plaintiff should have purchased other bread of a similar kind and sold it. To this plaintiff makes answer that he could not buy the defendant's bread, and no other similar bread would suffice. Ordinarily the plaintiff would be required to purchase, in order to reduce the damage, the article in question if it could be purchased, but where he cannot do so and it is a branded article or where no substitute may be bought the rule is inapplicable. (*Saxe* v. *Penokee Lumber Co.,* 159 N. Y. 371; *Orester* v. *Dayton Rubber Mfg. Co.,* 228 N. Y. 134, 137.) The court submitted to the jury as a question of fact whether the plaintiff could purchase the bread in question, or bread enough like it to warrant its resale, from others than the defendant. The jury, by their verdict, found that he could not. This was proper. (*Saxe* v. *Penokee Lumber Co.,* 159 N. Y. 371; *Orester* v. *Dayton Rubber Mfg. Co.,* 228 N. Y. 134, 138; *Cahen* v. *Platt,* 69 N. Y. 348.)

The verdict was for $2,250. According to the plaintiff's testimony, the contract was broken in the month of March, 1915, as to which date there seems to be no dispute. The action was tried on the 18th day of April, 1917, a little over two years thereafter. At $45 a week for two years, the profit would have been $4,680, so apparently the jury took into consideration the estimated expense to which the plaintiff would have been put in selling and delivering the bread in question, by making its verdict $2,250.

No one rule as to damages can be adopted to fit every case. As the circumstances differ, so must the rule. (*Baldwin* v. *U. S. Tel. Co.,* 45 N. Y. 744; *Gallagher* v. *Baird,* 54 App. Div. 398; *Masterson* v. *Mayor,* etc., *of*

*Brooklyn,* 7 Hill, 61; *Den Bleyker* v. *Gaston,* 97 Mich. 354.)

The judgment and order of the Appellate Division reversing the judgment entered upon the verdict of the jury should be reversed, and the verdict of the jury and the judgment entered thereon should be reinstated, with costs in the Appellate Division and this court to the plaintiff.

CHASE, HOGAN and CARDOZO, JJ., concur; HISCOCK, Ch. J., McLAUGHLIN and CRANE, JJ., dissent.

Judgment reversed, etc.