In re NATIONAL MOTORSHIP CORPORATION.
No. 254.

Circuit Court of Appeals, Second Circuit.
April 4, 1938.

90

Edwin R. Wolff, of New York City, for appellant.

Courtland Palmer, of New York City (Francis J. Ryan, Jr., of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

In a suit in admiralty for collision damages against the debtor's vessel Detroiter, brought by the Arundel Corporation, owner of the drill boat East River, the appellant on January 12, 1932, gave a stipulation for value up to $35,000 and thus procured the release of the debtor's vessel which had been seized. The United States held a preferred mortgage on the Detroiter at that time which provided that insurance taken out by the debtor should be made payable to the United States Shipping Board for distribution to the United States of America, mortgagee, and/or the General (later changed to National) Motorship Corporation, as their several respective interests might appear. The policies of insurance taken out by the debtor contained similar loss-payable clauses.

While this suit was pending and on April 3, 1934, equity receivers were appointed for the debtor in a New York State Supreme Court proceeding on an application of minority stockholders. The state court stayed the admiralty proceeding as against the debtor. July 12, 1934, an involuntary petition in bankruptcy was filed against the debtor. Reorganization proceedings followed later.

On August 7, 1934, the state court authorized its receivers to compromise the admiralty suit and directed that the receivers, upon payment of the judgment by appellant, assign to it "by virtue of the right of subrogation thus acquired" insurance claims against the United States Shipping Board and Lloyds (foreign underwriters), which insurance was carried for the debtor and covered damages caused to third parties. A decree entered for $20,000 was paid by appellant, in settlement of the suit, by a draft made payable to the Arundel Corporation and the receivers. Acting under the order of the state court, the receivers assigned to appellant the debtor's insurance claims against the underwriters. At the request of the equity receivers, appellant reassigned to them the insurance moneys claimed under the policy of the United States Shipping Board. The amount was $11,430.34. Appellant further agreed that after it was repaid this sum it would reassign to the receivers pro tanto $7,026.52 due on the Lloyds policies as further payments were made to it by the receivers. As consideration the receiver paid down $5,000 and assigned to the appellant moneys for repayment out of the future operating income from the debtor's vessels. Out of the total sum so to be repaid, appellant has received $15,500. The United States Shipping Board paid directly to the United States as mortgagee the insurance moneys due on the theory that the mortgage was in default and the United States was entitled to such payment under the terms of the mortgage, asserting that the assignment to appellant was without consideration or effective against the United States. The moneys so received were used in reduction of the mortgage debt.

Appellant filed a claim in this reorganization proceeding for $4,500, representing the unpaid balance between the $20,000 paid by it to the Arundel Corporation and the $15,500 repaid to it by the receivers. But the debtor's petition for a summary order for repayment to it of the $15,500 received by the appellant was granted. The order appealed from summarily directs payment by the appellant of $15,500 with interest to the debtor, upon the payment of which the appellant's claim for $20,000 with interest is allowed to it as

a general creditor. The theory below was that the appellant's right of indemnity against the debtor was a provable claim in bankruptcy, and the only consideration for the assignment of the insurance moneys after the petition in bankruptcy had been filed, was an antecedent indebtedness and it was thus preferential; that appellant obtained no rights and therefore could not give any by the reassignment; and that the payment by the receivers, being without adequate consideration and preferential, must be set aside.

■ Appellant claims it was subrogated to the rights of the debtor in the insurance moneys, but the subrogation rights which the appellant obtained when it paid the Arundel Corporation were what rights that creditor might have. It was not subrogated to any rights this debtor had by reason of collateral contracts to reimburse itself from insurance policies which had no direct relation to the claim. There is no statutory enactment which would permit the Arundel Corporation to recover this insurance. A surety, by payment of the debt of a principal at a time when it is obliged to do so, acquires the immediate right to be subrogated, to the extent necessary to obtain reimbursement or contribution, to all rights and remedies which were available to the creditor to obtain payment from the person or property of any person who, as to the surety, is primarily liable for the debt. Prairie State Nat. Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; Ingram v. Jones, 10 Cir., 47 F.2d 135. Appellant demanded no security for the issuance of the bond and was not entitled to be subrogated to any security owned or held by the debtor. When the decree was entered against the ship and the appellant paid the amount thereof, there then arose an obligation under the indemnity agreement by the debtor to repay or reimburse the appellant, and it therefore, in this proceeding, is an unsecured creditor.

■ Appellant agreed to pay libelant if the debtor was found liable. The contracts of insurance the debtor had with the underwriters were separate and independent from its contract with appellant. Therefore, the Arundel Corporation had no right or claim against the underwriters and appellant had no right of subrogation as against the insurers. In the absence of statute an indemnity underwriter is not liable to the obligee of the insured.

■ Moreover, when the insurance moneys were paid to the United States it received it as payee under the policy in its own right and not as the trustee for appellant. Neither the assignment of the insurance moneys by the state court order made "by virtue of the right of subrogation" nor the payment of the decree to the Arundel Corporation gave any right to appellant to be subrogated to any rights under the insurance policies. When appellant reassigned the moneys to the debtor's receivers, it was attempting to convey something it did not possess.

■ Appellant furnished no present consideration for the assignment of freight moneys to it. When it paid the award of the decree it only met its obligations under its stipulation of value which released debtor's vessel. It chose to draw a draft in favor of both the Arundel Corporation and the receivers, but this gave no greater rights to it than if it drew its draft to the Arundel Corporation alone as libelant. It did not change its position from that of a general creditor to that of a preferred creditor. When appellant assumed the obligation of the stipulation for value, it obtained no collateral for the undertaking, and when it paid, it added nothing to the bankrupt estate.

■ Appellant contends that since it paid the debt to the Arundel Corporation for which the debtor was primarily answerable, it became, by equitable assignment, the owner of the maritime lien. But the lien was expunged by the stipulation for value. By paying this award, the appellant furnished no money to pay the mortgage of the United States. The L.I.R.R. No. 18, 2 Cir., 67 F.2d 290; The Morning Star, D.C., 5 F.Supp. 502; The Vigilant, D.C., 175 F. 226.

■ The claim that it is entitled to an equitable lien on the mortgage res is untenable for the assignment of the insurance moneys was ineffective as the United States as the mortgagee did not consent; appellant had no right thereto and indeed voluntarily reassigned these moneys. Moreover, the insurance moneys having been received by the mortgagee, they have no relation to the surety and appellant clearly had no right to participate in the insurance contracts.

■ Appellant, as a creditor having knowledge of the insolvent condition of the debtor and that an involuntary petition in

92

bankruptcy had been filed, could not take property out of the earnings of the debtor. In re Times Square Auto Supply Co., 2 Cir., 47 F.2d 210. Creditors were not informed that such payments were made and the State court did not authorize it. It was a voluntary agreement by the state court receivers, and such payments constituted a preference. Taylor v. Sternberg, 293 U.S. 470, 55 S.Ct. 260, 79 L.Ed. 599.

The debtor was adjudged a bankrupt December 6, 1935, on a petition filed July 12, 1934, and on January 17, 1936, a proceeding in reorganization under section 77B, Bankr.Act, as amended, 11 U.S.C.A. § 207, continued and superseded the bankruptcy adjudication. The liability of the debtor to the appellant arose by reason of the indemnity agreement of January 12, 1932, and although the claim of appellant against the debtor became liquidated August 16, 1934, after the filing of the involuntary petition, it was for an antecedent debt. See Williams v. U. S. Fidelity & Guaranty Co., 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713. Since it appears without dispute that the $15,500 was paid to appellant after the filing of the involuntary petition, such moneys constituted preferential payments, and therefore the court properly entered a summary court order directing their return. The debtor in possession in bankruptcy became possessed of the legal title to all the assets of the debtor and had authority to ask for a summary order directing appellant to repay moneys received by it during the pendency of the bankruptcy in the district court. Gross v. Irving Trust Co., 289 U.S. 342, 53 S.Ct. 605, 77 L.Ed. 1243, 90 A.L.R. 1215; In re Diamond's Estate, 6 Cir., 259 F. 70. It was unnecessary for its return that the debtor resort to a plenary suit. Babbitt v. Dutcher, 216 U.S. 102, 113, 30 S.Ct. 372, 54 L.Ed. 402, 17 Ann.Cas. 969. After the filing of the petition in bankruptcy, the bankrupt's estate was in the possession of the court and within its power. The state court's disposition was always subject to the assent of the bankruptcy court, and while the bankruptcy proceeding was inactive, that gave no consent to the State court or its receivers to proceed with any distribution or disposition of the property. In re Diamond's Estate, supra; State of Missouri v. Angle, In re Sage, 8 Cir., 236 F. 644.

Order affirmed.