**BANK OF AMERICA NAT. TRUST & SAV-
INGS ASS'N v. MARYLAND CASU-
ALTY CO.**

No. 21431–L.

District Court, N. D. California, S. D.
March 24, 1941.

Keyes & Erskine, of San Francisco, Cal., for plaintiff.

Reginald S. Laughlin, Edward F. Treadwell, and Treadwell & Laughlin, all of San Francisco, Cal., for defendant.

LOUDERBACK, District Judge.

The Bank of America National Trust and Savings Association, a national banking association, hereafter called the Bank, instituted this suit for specific performance of a contract, for accounting and for a money judgment against the Maryland Casualty Company, a corporation, hereafter called the Casualty Company.

On January 14, 1921, John Quincy Wrenn died testate, leaving his residuary estate in equal parts to his wife and three children, one of whom was Joseph T. Wrenn. On February 18, 1921, the son, Joseph T. Wrenn, was appointed executor by the Probate Department of the Superior Court of the State of California, in and for the County of El Dorado. The Casualty Company subsequently issued three surety bonds to cover the executor, Joseph T. Wrenn, on contemplated sales of real property by the executor, on behalf of the estate. The three surety bonds were for the sum of $18,000. Joseph T. Wrenn, during the course of the administration of the estate, embezzled about $13,017.68 and personal property valued at $550. The Casualty Company discovered this defalcation, and on January 10, 1929, it secured a written assignment from Joseph T. Wrenn of his one-fourth interest in the residuary estate. (Plaintiff's Exhibit 21). Joseph T. Wrenn was removed as executor of the estate by the Probate Court, on January 11, 1929, and on January 23, 1929, Leo J. Anderson was appointed as administrator with the will annexed. The final account of Joseph T. Wrenn as executor was settled by the Court on March 8, 1929, charging Joseph T. Wrenn with $13,017.68 in cash and other real and personal property.

For several years prior to April 24, 1929, Joseph T. Wrenn had been borrowing money from the El Dorado Bank, predecessor to the Bank of America, the present plaintiff. On April 24, 1929, Joseph T. Wrenn was personally indebted to the Bank in the sum of $3,527.11 and interest. When the Casualty Company took an assignment from Joseph T. Wrenn of his one-fourth interest in the residuary estate, the Bank contended that inasmuch as Joseph T. Wrenn was insolvent, the assignment was a preference which was voidable in bankruptcy, and that the Bank would institute bankruptcy proceedings to set aside the assignment. This conflict of interest with respect to the one-fourth interest of Joseph T. Wrenn in the residuary estate brought about the contract of April 24, 1929 (Exhibit a attached to the Complaint), which was entered into between the Bank and the Casualty Company.

The contract recites the facts as set forth above, and then continues (page 3, paragraph 1):

"Whereas, the Casualty Company claims that the interest of Joseph T. Wrenn in said estate must be applied to the satisfaction of his indebtedness to the said estate arising out of his said misappropriation before it can be applied to the payment of his personal creditors, and

"Whereas, the Bank of America claims that the said estate when Joseph T. Wrenn misappropriated its property, became his general creditor to the extent of such misappropriation, and that as such general creditor, it has no right to apply the interest of Joseph T. Wrenn in said estate to the satisfaction of Joseph T. Wrenn's indebtedness to it, before the claims of the other general creditors of Joseph T. Wrenn are paid, but merely the right to share pro rata with the other general creditors of Joseph T. Wrenn in the application of his interest in the estate to the payment of their claims, and

"Whereas, even though the Bank of America is right in its contention, still it could not prevail against the Casualty Company, because the Casualty Company has already obtained the said assignment of Joseph T. Wrenn's interest in the said estate, which assignment will be prior in right to any right that the Bank of America now has or may acquire in the said action, or otherwise, to subject the interest of Joseph T. Wrenn in said estate to the payment of its claim, if the assignment is not set aside by means of a bankruptcy proceeding against Joseph T. Wrenn, or otherwise, and

"Whereas, the parties hereto desire to avoid such a bankruptcy proceeding, and desire to have their said respective claims determined as between themselves in the same manner and with the same effect as though the said assignment had not been made by Joseph T. Wrenn to the Casualty Company.

"Now, therefore, by reason of the premises, the parties hereto, in consideration of their mutual promises contained herein, agree as follows:

"1. The Bank of America agrees not to commence any proceedings for the adjudication of Joseph T. Wrenn as a bankrupt.

"2. The Bank of America agrees to petition the court, either by a petition for distribution, or by some other appropriate petition, for an order of the said court to the effect that the interest of Joseph T. Wrenn in said estate is subject to the payment pro rata of the claims of the Bank of America and the Casualty Company, it being understood that if the Bank of America is right in its said contention it shall not secure a prior right against the Casualty Company so far as said personal indebtedness is concerned, by means of a judgment lien, or attachment or execution, but that, if the Bank of America is right in its said contention, all that the Bank of America obtains by virtue of any judgment, or by virtue of any attachment or execution, shall be shared by it pro rata with the Casualty Company, and that all the Casualty Company received by virtue of the said assignment shall be shared by it pro rata with the Bank of America.

"3. The Bank of America agrees to transfer and assign to Lloyd L. Mulit its said claim against the said estate for $3,000.00. When such assignment is made, John Ralph Wilson, the attorney for the Casualty Company, or some other attorney it may designate, shall appear in the said estate as the attorney for Lloyd L. Mulit. (Until the Casualty Company pays a loss under its said bonds, it has no right to appear in said matter, and the purpose of the said assignment is merely to give its attorney the right to appear in said matter as an attorney for a creditor of the estate.) Such appearance by the attorney for the Casualty Company in the said matter shall be solely for the purpose of opposing the said petition of the Bank of America and enable it to make its claim that the interest of Joseph T. Wrenn in the said Estate should be applied in satisfaction of the indebtedness of Joseph T. Wrenn to the estate arising out of his said misappropriation before any part of said interest is applied in satisfaction of the said judgment of the Bank of America.

"4. If, by an order of the said court which becomes final, the said contention of the Bank of America is maintained, it is agreed that the interest of Joseph T. Wrenn in the said estate shall be applied pro rata to the satisfaction of the claims of the Bank of America and the Casualty Company; and that the Bank of America shall enforce any rights under any such judgment, and under any attachment or execution issued thereunder, to this end and that the Casualty Company shall exercise whatever rights it has under the said assignment to this end, and that if by such final order, the said contention of the Bank of America is maintained, the Casualty Company will not seek to enforce any rights under said assignment from Joseph T. Wrenn so as to give it a prior right to the Bank of America, but will use the said assignment for the pro rata benefit of itself and the Bank of America as herein provided. If by such final order it is adjudged that the interest of Joseph T. Wrenn in said estate must be applied in satisfaction of his indebtedness to the said estate arising out of his said misappropriation, before such interest is applied in satisfaction of any of the other debts of Joseph T. Wrenn, including his said personal indebtedness to the Bank of America, then the Casualty Company will have no liability under its said bonds, but will have suffered loss only to the extent of costs, expenses and counsel fees expended by it in this matter; and, consequently, in that event, it is agreed that the balance of the interest of Joseph T. Wrenn in the said estate, after sufficient thereof has been applied to satisfy his indebtedness to the said estate arising out of the said misappropriation, shall be applied pro rata to the payment of the said personal indebtedness of Joseph T. Wrenn to the Bank of America, and to its costs and expenses in connection with the said matter and a reasonable counsel fee for the services of its attorneys in connection therewith, including its costs, expenses and counsel fees in the said action against the said Joseph T. Wrenn to recover his said personal indebtedness, and to the costs and expenses of the Casualty Company in connection with the said matter and a reasonable counsel fee for the services of its attorneys in connection there-

with, excluding any counsel fees for the services of the said attorneys of the said Casualty Company in appearing in the said matter as the attorneys for Lloyd L. Mulit for the said purpose. * * * "

Before any action was taken before the Probate Court by the Bank, on June 6, 1929, Leo J. Anderson, the administrator of the estate, instituted suit against the Casualty Company for the loss suffered by the estate through the misappropriations of Joseph T. Wrenn. Thereupon, the Casualty Company filed a petition in the Probate Court, on July 24, 1929 (Plaintiff's Exh. 4). The petition prayed that the administrator, Anderson, be required to apply Joseph T. Wrenn's share of the estate to the payment of his indebtedness to the estate, and that all proceedings by the administrator for the receipt of payment under the bonds be stayed.

The Casualty Company's petition, in the Probate Court (page 4, pars. VI and VII.) alleged: "Your petitioner further shows that the said Leo J. Anderson, administrator with the will annexed of the estate of said decedent as above set forth, has, at all times since his appointment as such, refused and does now refuse to deduct from the distributive share of said Joseph T. Wrenn, in the estate of said decedent for the benefit of the remaining heirs at law, legatees * * * the sum of $13,017.68 charged against the said Joseph T. Wrenn and has demanded of both your petitioner and said Joseph T. Wrenn the immediate payment to said administrator of said sum of $13,017.68, regardless of the fact that the said administrator * * * now holds in his hands, as the distributive share of said Joseph T. Wrenn in said estate, in addition to said executor's compensation and compensation for his counsel and attorney, money and other property belonging to the said Joseph T. Wrenn, as legatee and devisee, in value in excess of said sum last above mentioned."

The petition continues: "Your petitioner is further informed and believes and upon its information and belief avers that the said administrator with the will annexed, in the due course of his administration of said estate, is now and hereafter will be able, without harm or loss or detriment of any kind to any heir at law of said decedent, or any legatee or devisee named in his last will, or any creditor of his estate, to sell, dispose of and distribute the proceeds of said estate so as to pay each heir at law, legatee, devisee and creditor

thereof, excepting said Joseph T. Wrenn on account of the said sum of $13,017.68 charged against said Joseph T. Wrenn as aforesaid * * * *."

The Bank appeared in opposition to that petition, through A. R. Magruder, as assignee for collection of the Bank's claim, claiming the estate had no right to have Wrenn's share in the estate applied to his defalcations.

Anderson, the administrator, appeared and filed objections to the Casualty Company's petition (Plaintiff's Exhibit 6). It alleged (page 2, par. 3) of its answer: "If the prayer of said petitioner to stay proceedings in the civil action brought against it be granted, the said estate will be insolvent; that the only property of any particular value now remaining in said estate consists of certain timber lands, which lands are valuable and will produce a considerable sum of money if sold to good advantage, but said property is of such a character that if sold at forced sale, it would bring but a trifling amount."

The answer continues (page 3, par. VI):

"Said Administrator has demanded of said petitioner the sum of $13,017.68, but denies that he now holds in his hands, as the distributive share of said Joseph T. Wrenn, any money or property in excess of the sum of $13,017.68, or any sum whatever, or any commissions or compensation of executor or compensation of attorney, or any money or thing belonging to said Joseph T. Wrenn.

"VII. Denies that he, in due course of administration of said estate, or otherwise, or at all, is now or hereafter will be able, without harm or loss or detriment to any heir at law of said decedent, or legatee or devisee named in his last will, or any creditor of his estate, to sell, dispose of or distribute the proceeds of said estate so as to pay each heir at law, legatee, devisee and creditor thereof, excepting said Joseph T. Wrenn, in full from the assets belonging to said estate now in the hands of said administrator, without requiring any immediate payment from either said petitioner or said Joseph T. Wrenn on account of said sum of $13,017.68 charged against said Joseph T. Wrenn; and alleges that there is no money whatever of said estate now in the hands of said administrator and no property of any kind in the said estate that can be sold at forced sale, or readily sold, to good advantage, or for any sum or sums that will be sufficient to pay the debts and

expenses of administration and the legacies provided for in said Will; and alleges that, if he is forced to close the said estate without the receipt of said sum of $13,017.68, the estate will be totally wrecked and the legatees and devisees will receive nothing; that said Joseph T. Wrenn has no money or other property and is now imprisoned and without earning power and the legatees and devisees are entirely dependent upon the receipt of said sum of $13,017.68 from said petitioner for the recovery of anything whatever from the said estate."

The allegations of this answer definitely met and negatived the allegations of the petition of the Casualty Company that the facts of the case made a setoff legally possible.

On November 16, 1929, the Probate Court entered an order denying the petition of the Casualty Company (Plaintiff's Exh. 7) and filed its findings (Defendant's Exh. 1.) The Probate Court found (page 2, par. 2) that: "There is no money or other personal property of said estate in the hands of the Administrator with the will annexed."

(Page 3, par. VIII):

"That said administrator with the will annexed is not now, and will not hereafter be able, without harm or loss or detriment to the devisees or legatees named in the will, or the creditors of said estate, to sell, dispose of or distribute the proceeds of said estate so as to pay each heir at law, devisee, legatee and creditor thereof, excepting said Joseph T. Wrenn, in full from the assets belonging to said estate now in the hands of said administrator, without requiring any immediate payment from said petitioner or said Joseph T. Wrenn on account of said sum of $13,017.68 charged against said Joseph T. Wrenn.

"That there is a large sum due for delinquent taxes of said estate, which sum is a lien on the real property of said estate, and the debts, claims, legacies, taxes now delinquent, taxes now due and payable, and expenses of administration amount to sum greatly in excess of the total amount that can be realized from the sale of all property of the estate, without the said sum of $13,017.68, unless the said timber lands be sacrificed at a forced sale, which action would be against the best interests of the estate and possibly render the same insolvent".

On June 7, 1932, the Casualty Company paid the estate for the defalcation the amount of $13,017.68.

On January 17, 1937, a decree of distribution was made, distributing one-fourth of the residue of the estate of John Quincy Wrenn to the Casualty Company, as Joseph T. Wrenn's assignee. The Casualty Company had notified the Bank of the date of the hearing on the petition for distribution. The bank wrote the attorney for the Casualty Company, on January 16, 1937 (Plaintiff's Exhibit 34): "Confirming our telephone conversation of this morning, my understanding is that no action of any sort will be taken in the above-entitled-estate, or with respect to the interest of Joseph T. Wrenn therein, which will prejudice in any way whatever the rights of the Bank of America; and that, after distribution is made, you and I will discuss the respective rights of your Casualty Company and the Bank under the agreement between them, in order to attempt to settle the matter without litigation."

Again on January 25, 1937, the Bank wrote the attorney for the Casualty Company (pl. exh. 37):

"* * * Thank you for your letter of the other day, in which you tell me that there was distributed to the Maryland Casualty Company two-eighths of the above estate.

"Under the agreement, dated April 24, 1929, between the Bank and the Maryland Casualty Company, it was agreed that the interest so distributed to you should be applied pro rata to the satisfaction of the claims of the Bank and of the Casualty Company against Joseph T. Wrenn. * * *"

The Casualty Company refused to prorate the money it had received, and the Bank brings this suit.

The Casualty Company contends that the Bank at no time filed the application provided for by the agreement. That the Probate Court did not at any time render any decision that the legacy to the executor, Joseph T. Wrenn, was applicable pro rata to all his creditors, or to the Bank and the defendant, or was first applicable to make good his defalcations. That therefore the terms of the contract were not met. That the Bank is not entitled to any part of the funds received by the Casualty Company. That if this Court should decide that at this time the United States District Court

has before it for determination the question whether or not the contract of April 24, 1929, should be interpreted as basing the right of the Bank on the abstract legal question of whether the distributive share of Joseph T. Wrenn was applicable pro rata to all the creditors of Joseph T. Wrenn, or was first applicable to make good his defalcation, then this court as a court of equity should hold that such share is first applicable to such defalcation.

The contentions of the Bank are, that the Casualty Company, by filing its petition of July 24, 1929, before the Probate Court, which it served on the Bank, waived the provisions of the contract that the Bank file a petition in the Probate Court and make an assignment of its claim to Mulit so that Mulit could employ the attorney for the Casualty Company to oppose the petition. The Bank contends that the Court order of November 16, 1929, decided against the Casualty Company the question of priority and denied the Casualty Company's petition which claimed that the estate had and should exercise the prior right to apply Wrenn's interest in the estate to the payment of his obligation. The Bank further contends that the money distributed to the Casualty Company under the assignment is held in trust by the Casualty Company, to be distributed under the terms of the contract between the Bank and the Casualty Company.

From the terms óf the contract it is clear that the Casualty Company desired to avoid paying the estate the $13,017.68 defalcations of its insured, Joseph T. Wrenn, by having the Probate Court offset the amount thus due by Joseph T. Wrenn to the Estate, against the amount the Estate would pay to Joseph T. Wrenn, as an heir of the Estate.

The Bank contended there was no such right of offset, that Joseph T. Wrenn's share of the estate should be prorated among his general creditors; that aside from the assignment the Casualty Company could be only a general creditor; that the estate was but a general creditor.

The Bank would have instituted Bankruptcy proceedings with the intent of vacating Joseph T. Wrenn's assignment to the Casualty Company, except for the possibility of a legal right in the estate itself, to offset its claim for $13,017.68 against Joseph T. Wrenn's share in the estate.

In bankruptcy it is very probable that Joseph T. Wrenn's assignment to the Casualty Company of all of his assets when he was insolvent would have been a preference and voidable by the Bankruptcy Court.

For, Acts of bankruptcy by a person shall consist of his having "transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors." Section 3a and 3a (2) of the Bankruptcy Act, 11 U.S.C.A. § 21a, and par. 2.

"And a preference is a transfer * * * of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition in bankruptcy * * * the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class." Section 60, sub. a, the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a.

The unsecured bankruptcy claim of a surety company for money it has paid because of a defalcation of its insured who is the bankrupt has no preference over other claims of general unsecured creditors. In re National Motorship Corporation, 2 Cir., 96 F.2d 88, certiorari denied Home Indemnity Co. v. National Motorship Corp., 305 U.S. 610, 59 S.Ct. 68, 83 L.Ed. 388.

The parties agreed not to put Joseph T. Wrenn through bankruptcy, and to "have their respective claims determined as between themselves in the same manner and with the same effect as though the said assignment had not been made by Joseph T. Wrenn to the Casualty Company" (Page 3, par. 4, of the Contract).

When the case is considered as if no assignment were involved, the following situation appears: Both parties conceded that the estate had a claim against Joseph T. Wrenn for the amount of his defalcations as executor. That the Casualty Company was surety on bonds which covered such defalcations and as such had a liability to the estate, though at that particular time, the amount of any such possible liability had not been determined. (The Casualty Company made a reservation in the contract [page 2, par. 4] that it "was understood that the execution of this agreement by the Casualty Company shall not be construed as an admission by it of any liability to the estate, or as to the extent of any liability, it merely being assumed for the purpose of this agreement that such a liability exists.")

Their theory and agreement was that if there was an offset there would have been no value in putting Joseph T. Wrenn through bankruptcy and attempting to vacate the assignment made to the Casualty Company, for they believed the estate would then have had a prior right to the share of Joseph T. Wrenn, independent of any assignment. That if there was no right in the estate to a set-off, then the Casualty Company was in no better position than the estate; the Casualty Company and the Bank would be general creditors of any share of the estate due to Joseph T. Wrenn. For they had agreed, it has been noted, that "their respective claims * * * were to be determined as between themselves * * as though the said assignment had not been made by Joseph T. Wrenn to the Casualty Company."

The Bank agreed (page 4, par. 3) to petition the Probate Court either "by a petition for distribution or by some other appropriate petition" for an order deciding whether or not the estate had a right to set-off the amount due it by Joseph T. Wrenn against the amount the estate would eventually pay Joseph T. Wrenn as an heir of the estate; or whether the "interest of Joseph T. Wrenn in said estate is subject to the payment pro rata of the claims of the Bank of America and the Casualty Company", etc. (See page 4, par. 2, of the contract.)

The parties to the contract were laying down a means by which the disputed point could be determined by the Probate Court.

The parties state in the agreement they provided for that procedure for the ascertainment of their rights under the belief that the Casualty Company would have no right to appear before the Probate Court until it had made payment of any amount due under the bonds, and they wished to avoid such payment.

This theory of the contract is brought out throughout the contract and especially on page 5, last line, where the parties agree: "if it is adjudged that the interest of Joseph T. Wrenn in said estate must be applied in satisfaction of his indebtedness to the said estate arising out of his said misappropriation, before such interest is applied in satisfaction of any of the other debts of Joseph T. Wrenn, inclusive, his said personal indebtedness to the Bank of Amercia, then the Casualty Company will have no liability under its said bonds * * * the balance of the interest of Joseph T. Wrenn in the said estate after

sufficient thereof has been applied to satisfy his indebtedness to the said estate arising out of the said misappropriation, shall be applied pro rata to the payment of the said personal indebtedness of Joseph T. Wrenn to the Bank of America * * * and to the costs and expenses of the Casualty Company in connection with the said matter. * * *"

The parties agreed that if there was a right of set-off in the estate, the Casualty Company and Bank would prorate their claims in what remained in Joseph T. Wrenn's share if anything, that in that case, the Casualty Company's claim would be only for its costs and expenses. That if the estate had no right of set-off, the entire share of Joseph T. Wrenn would be prorated between the Casualty Company and the Bank. In that case, however, the Casualty Company's claim would include whatever it paid the estate for Joseph T. Wrenn's defalcations, to be prorated with the Bank's claim.

As far as the question goes as to who must petition the Probate Court for a determination of the disputed issue under the facts of this case, the provisions of the contract that the Bank agreed to petition the Probate Court for a determination of the disputed legal question, cannot be held to be a condition precedent to any enforcement of the contract, where the question was presented to the Probate Court for a determination.

Unless the construction is made necessary by the terms of the contract, Courts are disinclined to construe stipulations of a contract as conditions precedent, especially when such a course would work a forfeiture. Geo. W. Lucy v. R. W. Davis, 163 Cal. 611, 126 P. 490; Victoria Steamship Company v. Western Assurance Company of Toronto, 167 Cal. 348, 139 P. 807; San Diego Construction Company v. Mary S. Mannix, 175 Cal. 548, 166 P. 325.

When the Casualty Company initiated the proceeding before the Probate Court to determine the same issue, it waived the right to insist that the Bank do so.

The Casualty Company could under the law raise the question of a right of set-off, which the insured Joseph T. Wrenn might have had. Fidelity & Deposit Company of Maryland v. Duke, 9 Cir., 293 F. 661.

A waiver does not require a new contract or a new consideration where a

party to an existing contract, by his affirmative actions, elects to abandon some provision or condition inserted in a contract for his benefit. 17 C.J.S., Contracts § 492, pp. 994, 995; Thomas A. Edison, Inc., v. Blackman Distributing Co., 2 Cir., 66 F.2d 722, 730, and authorities there cited.

This Court finds that the Probate Court did decide there was no right of set-off. The Casualty Company waived the right to demand that the Bank petition the Probate Court to decide the question.

■ If, however, this Court were to consider and determine the question of a right of set-off as it existed before the Casualty Company paid the estate the $13,017.68 and thus ended the question of any right of set-off, the ruling would be that no right of set-off existed. Under certain conditions California recognizes the right of set-off between an estate and an heir. When the residue of an estate consists of money, a debt due from a distributee to the estate and forming a part of the assets, may properly be set-off against his distributive share, whenever it can be done without injustice to the parties. 12 Cal.Juris. 182; In re Estate of Gamble, 166 Cal. 253, 135 P. 970; In re Estate of Schaeffer, 53 Cal. App. 493, 200 P. 508. Here there was no personal property in the estate (see findings of the Probate Court, page 2, par. 2, supra), and the doctrine is never applied to the detriment of the estate. In re Estate of Loheide, 17 Cal.App. 475, 120 P. 56. In this case, the doctrine of right of set-off could not have been applied without serious detriment to the estate. For in the hearing before the Probate Court, it will be recalled that the Court found (Defendant's Exh. page 2, par. 2) that:

"There is no money or other personal property of said estate in the hands of the administrator with the will annexed" and (page 3. par. VIII) "That said administrator with the will annexed is not now, and will not hereafter be, able, without harm or loss or detriment to the devisee or legatees named in the will, or the creditors of said estate, to sell, dispose of or distribute the proceeds of said estate so as to pay each heir at law, devisee, legatee and creditor thereof excepting said Joseph T. Wrenn, in full from the assets belonging to said estate now in the hands of said administrator, without requiring any immediate payment from said petitioner or said Joseph T.

Wrenn on account of said sum of $13,017.68 charged against said Joseph T. Wrenn.

"That there is a large sum due for delinquent taxes of said estate, which sum is a lien on the real property of said estate, and the debts, claims, legacies, taxes now delinquent, taxes now due and payable, and expenses of administration amount to a sum greatly in excess of the total amount that can be realized from the sale of all property of the estate, without the said sum of $13,017.68, unless the said timber lands be sacrificed at a forced sale, which action would be against the best interests of the estate and possibly render the same insolvent."

■ Therefore under the terms of the contract between the Casualty Company and the Bank the parties to the contract are to pro rate Joseph T. Wrenn's interest in the estate of his father John Quincy Wrenn.

Let judgment enter for the plaintiff as prayed, upon the filing of approved findings of fact and conclusions of law.