**FEDERAL TRADE COMMISSION,**
Plaintiff,

v.

**STERLING DRUG, INC.,** Dancer-Fitzgerald-Sample, Inc. and Thompson-Koch Company, Defendants.

United States District Court
S. D. New York.
March 8, 1963.

Harold D. Rhynedance, Jr., Berryman Davis, Howard S. Epstein, Attys., Federal Trade Commission, Washington, D. C., for plaintiff.

Dunnington, Bartholow & Miller, New York City, for defendant Dancer-Fitzgerald-Sample, Inc., Frank A. F. Severance, Gordon M. Lucey, New York City, of counsel.

Cahill, Gordon, Reindel & Ohl, New York City, for defendants Sterling Drug, Inc. and Thompson-Koch Co., Matthias F. Correa, Thomas C. Mason, New York City, of counsel.

DAWSON, District Judge.

This is a motion by the Federal Trade Commission, brought on by an order to show cause, for a preliminary injunction to restrain the defendants from disseminating or causing to be disseminated any advertisement which refers to a comparative study of five analgesic products reported in the December 29, 1962 issue of the Journal of the American Medical Association, if such advertisement represents, directly or by implication:

(a) That the findings or conclusions of the clinical investigators conducting the said study have been endorsed or approved by the United States Government.

(b) That this study, or any finding of the clinical investigators, has been endorsed or approved by the American Medical Association or by the medical profession.

(c) That the clinical investigators found that Bayer Aspirin will not upset the stomach, is as gentle to the stomach as a plain sugar pill, or is more gentle to the stomach than any analgesic product containing more than one ingredient, or that there is no analgesic product which is more gentle to the stomach.

(d) That the clinical investigators reported that Bayer Aspirin affords a higher degree of pain relief than any other product tested, at the end of fifteen minutes.

A temporary restraining order was denied by Judge Sugarman. A hearing has been held. There seems to be no substantial controverted issue of fact requiring the taking of testimony.

The application for a preliminary injunction is made pursuant to Section 13 of the Federal Trade Commission Act, 15 U.S.C. § 53, which permits the Commission to apply for a preliminary injunction when it has "reason to believe—(1) that any person, partnership, or corporation is engaged in, or is about to engage in, the dissemination or the causing of the dissemination of any advertisement in violation of section 12 * * *" and that the enjoining thereof "would be to the interest of the public."

Section 12, to which the foregoing section refers, relates to "any false advertisement" which is likely to induce the purchase of "food, drugs, devices, or cosmetics."

■ The issue on this application is, therefore, whether the Commission has established by the requisite degree of evidence that the defendants are engaged in, or are about to engage in, the dissemination of a "false advertisement."

The background of this proceeding, as it appears from the papers and the record, is that there is intense competition between manufacturers and distributors of various types of analgesic drugs, among which are Bayer Aspirin, St. Joseph's Aspirin, Anacin, Bufferin and Excedrin. The advertising claims for these various analgesic drugs have extolled the comparative benefits of the various products. There have been claims such as "Bufferin gives pain relief twice as fast as aspirin," and the claim of Anacin that it contains "not one pain relieving element but three." Bayer felt that these claims of its competitors were false and injurious to it,

In 1961 administrative complaints were filed by the Commission relating to the advertising of all these products. But these complaints have not been brought on for hearing even before a trial examiner. It appears that the Commission, perhaps in preparation for hearings, authorized and financed a study of the five proprietary analgesic compounds by two physicians and a medical statistician. These experts made a systematic study and rendered their report to the Commission. At first the Commission refused to allow the report to be published, but after further urging by the doctors that their report should be published in the public interest, the Commission authorized them to publish their findings; and the report was published in the Journal of the American Medical Association on December 29, 1962, with the authorization of the Commission.

The American Medical Association issued a press release, dated December 28, 1962, relating to this article and summarized it as follows:

"CHICAGO—Medical researchers today reported they found no significant difference among five non-prescription aspirin compounds in ability to ease pain during the first three hours after they were taken.

"Another phase of the study showed that two aspirin preparations, which contained acetophenetidin, also known as phenacetin, were associated with a significantly higher incidence of 'upset stomach' than the other three compounds.

"The study was reported by Thomas J. DeKornfeld, M.D., Louis Lasagna, M.D., and Todd M. Frazier, Sc.M., Baltimore, in the current (Dec. 29)

Journal of the American Medical Association.

"The five products studied, all obtained from retail outlets, were Bayer Aspirin, St. Joseph's Aspirin, Bufferin, Excedrin, and Anacin. Excedrin and Anacin were the only drugs studied which contained phenacetin.

" 'The difference in the retail purchase price of the five drugs is not reflected in the effectiveness and comfort of the treatment, and the over-all performance of the less expensive agents in the group compares favorably with that of the more expensive ones,' the author said."

The Commission does not contend that there is anything false in the report, or in the press release of the American Medical Association with reference thereto. It may have been annoyed that the Government's connection with the study was revealed, but it authorized the publication of the report by these medical experts and their report states at the end of it: "This study was supported by a grant from the Federal Trade Commission, Washington, D. C." The Chairman of the Commission, testifying before a Special Committee of the United States Senate, said that the release of the study by the Commission was an "inadvertence." He said, "Now, the Commission has not evaluated that study as yet, although we paid for the study." *

At any rate, Sterling Drug, Inc., the manufacturer of Bayer Aspirin, thought that the report of this study would assist the sale of its product and tend to refute claims made by its competitors. It commenced an advertising campaign pub-

* The transcript of the testimony before the Subcommittee of the United States Senate includes the following interesting remarks:

"Senator Muskie. Is this study technique one that is useful to you in your enforcement problem?

"Mr. Dixon. Well, I can tell you this, sir, that there will be no more. There will be no more studies published until they have been evaluated completely at the Federal Trade Commission, because you can see exactly what happened here. I don't think they should be."

licizing the results of the study. This advertising campaign precipitated this proceeding.

The issue is whether the advertisements are false.

A typical advertisement, offered by the Commission, is one which appeared in Life Magazine and numerous newspapers throughout the country. This advertisement, in its entirety, reads as follows:

"GOVERNMENT – SUPPORTED MEDICAL TEAM COMPARES BAYER ASPIRIN AND FOUR OTHER POPULAR PAIN RELIEVERS"

"FINDINGS REPORTED IN THE HIGHLY AUTHORITATIVE JOURNAL OF THE AMERICAN MEDICAL ASSOCIATION REVEAL THAT THE HIGHER PRICED COMBINATION-OF-INGREDIENTS PAIN RELIEVERS UPSET THE STOMACH WITH SIGNIFICANTLY GREATER FREQUENCY THAN ANY OF THE OTHER PRODUCTS TESTED, WHILE BAYER ASPIRIN BRINGS RELIEF THAT IS AS FAST, AS STRONG, AND AS GENTLE TO THE STOMACH AS YOU CAN GET."

"This important new medical study, supported by a grant from the federal government, was undertaken to compare the stomach-upsetting effects, the speed of relief, and the amount of relief offered by five leading pain relievers, including Bayer Aspirin, aspirin with buffering, and combination-of-ingredients products. Here is a summary of the findings.

"UPSET STOMACH

"According to this report, the higher priced combination-of-ingredients products upset the stomach with significantly greater frequency than any of the other products tested, while Bayer Aspirin, taken as directed, is as gentle to the stomach as a plain sugar pill.

"SPEED AND STRENGTH

"The study shows that there is no significant difference among the products tested in rapidity of onset, strength, or duration of relief. Nonetheless, it is interesting to note that within just fifteen minutes, Bayer Aspirin had a somewhat higher pain relief score than any of the other products.

"PRICE

"As unreasonable as it may seem, the products which are most likely to upset the stomach—that is, the combination-of-ingredients products —actually cost substantially more than Bayer Aspirin. The fact is that these products, as well as the buffered product, cost up to 75% more than Bayer Aspirin."

The Commission admitted on the argument that there is no statement in the advertisement that is, *per se,* false. The Commission's argument was that the advertisement as a whole created a false impression.

The Commission says, in the first place, that the advertisement creates the impression that the findings of the study are endorsed and approved by the United States Government. There is no such statement in the advertisement. The advertisement refers to a "Government-Supported Medical Team." The Commission admits that this is a true statement. The Commission picked the team; the Commission supported the study with a grant; the Commission authorized the release of the report of the study. If any false impressions are created about the orgin of the study they are impressions created by the actions of the Commission itself. The advertisement merely states what is a fact.

The second point made by the Commission is that the advertisement connotes that the American Medical Association approves the findings of the study. The advertisement does not so state. It merely says that the findings were reported in the Journal of The American

Medical Association. They were reported in that Journal. That statement is true.

The third point made by the Commission is that a false statement appears when the advertisement states:

"According to this report, the higher priced combination-of-ingredients products upset the stomach with significantly greater frequency than any of the other products tested, while Bayer Aspirin, taken as directed, is as gentle to the stomach as a plain sugar pill."

The summary of the study, which appeared in the Journal of The American Medical Association, said on this point as follows:

"Anacin, Bayer Aspirin, Bufferin, Excedrin, and St. Joseph's Aspirin were compared with a placebo and with each other, from the point of view of analgesic efficacy and incidence of gastrointestinal distress. The analgesic effects were studied in post-partum patients, while the gastrointestinal side-effects study was performed in elderly infirmary patients. There was no striking difference among the agents so far as rapidity of onset, peak effect, or duration of analgesia was concerned. There was no difference between the incidence of gastrointestinal effects seen after the placebo and that after Bayer Aspirin, Bufferin, or St. Joseph's Aspirin. The incidence of such side effects was higher after Anacin or Excedrin."

It was admitted that Anacin and Excedrin are combination-of-ingredients products. This part of the advertisement does not misrepresent the results of the study made for the Commission. It was indicated on the argument that the Commission would limit its objection to this part of the advertisement to the use of the words "sugar pill" because the study used the word "placebo." The dictionary defines "placebo" as "any harmless substance, such as bread pills, given to soothe the patient's anxiety rather than

as a remedy." It was urged by the Commission that it was a misrepresentation to use the words "sugar pills" rather than the word "placebo." However, the Commission's representative admitted at the hearing that the placebo used in the study "was made up of sugar and another element or binder." (R. 23). To describe this placebo as being a sugar pill is hardly a false or misleading statement. In fact it would make the statement much more understandable to the reader than the use of the technical word "placebo." The Court does not consider that this was false advertising.

The fourth point made by the Commission refers to the statement in the advertisement that "the higher priced combination-of-ingredients products upset the stomach with significantly greater frequency than any of the other products tested." As is shown in the study report in the Journal of The American Medical Association, the combination-of-ingredients products consisted of Bufferin, Excedrin and Aspirin. And this study also shows that the incidence of gastrointestinal effects was higher after Anacin and Excedrin than after the other products tested. The doctors who made the report, in their comment included in the study, stated:

"The difference in the retail purchase price of the 5 drugs is not reflected in the effectiveness and comfort of the treatment, and the over-all performance of the less expensive agents in the group compares favorably with that of the more expensive ones."

The Court cannot find that the statement in the advertisement above is significantly false or misleading.

The fifth and final point made by the Commission is the argument that the advertisement reported that Bayer Aspirin afforded a higher degree of pain relief than any other product tested at the end of fifteen minutes. The advertisement showed that Bayer stated that "there is no *significant* difference" with reference

332

to relief. It nevertheless went on to say: "Nonetheless, it is interesting to note that within just fifteen minutes, Bayer Aspirin had a somewhat higher pain relief score than any of the other products." This is exactly what the report published in the Journal of The American Medical Association showed. It showed that there was no "significant" difference between the products in pain relief, but in Table 1 of this report it showed that in testing the products for pain relief Bayer Aspirin scored somewhat higher at the end of fifteen minutes.

---

If the advertisement had contained the representations described in the prayer for relief, the Court would certainly grant an injunction. However, the facts show that the advertisement did not contain those representations, and any belief that the advertisement would cause the average, reasonable person to draw the inferences drawn by the Commission from it, does not seem to have been established by the Commission. The advertisement is definite and precise. The Court cannot find on the papers submitted that it was a false advertisement.

■ Of course, in evaluating the falsity of the advertisement, the Court in this proceeding has only to resolve whether there was reasonable cause to believe that the alleged violation had taken place. Federal Trade Commission v. Rhodes Pharmacal Co., 191 F.2d 744 (7th Cir., 1951). And in any determination as to whether an advertisement is false or misleading, the test is the effect it may reasonably be expected to have on the general public. P. Lorillard Co. v. Federal Trade Commission, 186 F.2d 52 (4th Cir., 1950); Charles of the Ritz Dist. Corp. v. Federal Trade Commission, 143 F.2d 676 (2d Cir., 1944). The Court has applied these standards in evaluating the advertisement.

■ The defendants have not yet had a hearing before the Commission. This is an application for an injunction before the hearing. It may be that the Commission can adduce additional evidence at the hearing, but no such additional evidence is now before the Court. The Court may not grant a preliminary injunction unless it can find that the defendants have, in fact, used a false advertisement. The Court, on the papers submitted, cannot so find.

■■ In passing on an application such as the present one, the Court must always keep in mind the conflicting impact of the constitutional right of freedom of speech with the limitation upon that right if there is false advertising. If the advertisement is not false, defendants have a constitutional right to utilize it even though its content and blatancy may annoy both the Commission and the general public. The issue is falsity, and the law is well established that a preliminary injunction should not issue unless the Court is convinced with reasonable certainty that the complainant would succeed at the final hearing. Hall Signal Co. v. General Railway Signal Co., 153 F. 907 (2d Cir., 1907).

We have here, in essence, this situation. For years the general public has been urged to buy higher priced analgesics on the ground that they are more effective than a lower priced one. The consumer has an interest in knowing the facts of this situation, and the Commission is supposed to represent the interest of the consumer. The Commission has had a study made by experts which would seem to indicate that the representations made by the higher priced products are not correct and that the general public can get as good, or better relief from a lower priced product. Why may not a manufacturer of a lower priced product utilize this information which has been developed by the Commission, paid for by the Commission, and published by authority of the Commission? If the report of the experts employed by the Commission is accurate, then the public has a right to know those facts. If the report of the experts employed by the Commission is

inaccurate, then the Commission itself is guilty of promoting false advertising.

The petition for a preliminary injunction is denied.   So ordered.