**W. & J. SLOANE, INC., Plaintiff,**

v.

**KAPLAN FURNITURE COMPANY and Knapp & Tubbs, Inc., Defendants.**

United States District Court
S. D. New York.

June 24, 1964.

Weil, Gotshal & Manges, New York City, for W. & J. Sloane, Inc.

Wolf, Haldenstein, Adler, Freeman & Herz, New York City, for Kaplan Furniture Co. and Knapp & Tubbs, Inc.

COOPER, District Judge.

Plaintiff seeks to enjoin defendants from marketing and displaying furniture manufactured by Kaplan under the name "Beacon Hill Collection." Plaintiff claims the exclusive right to sell this concededly outstanding quality furniture by virtue of a 1959 oral agreement with defendant Kaplan, by the terms of which, it is asserted, plaintiff was given exclusive rights in plaintiff's "trade areas"— specifically, New York, Washington, D. C. and San Francisco.

The gravamen of plaintiff's action is the granting by Kaplan, of the exclusive use to plaintiff of the name "Beacon Hill" in these trade areas. Kaplan concedes the making of the oral agreement, but avows it was terminable at will by either side. After five years of operation under the agreement, Kaplan suddenly purported to exercise this right in April of this year by informing plaintiff that it intended to allow defendant Knapp & Tubbs, Inc. to display Beacon Hill furniture in the latter's recently acquired New York showroom. It is quite apparent that, among other detriments to plaintiff, this will result in price-cutting.

Plaintiff brings this action to permanently enjoin defendants from executing this plan, and, pending such determination, that they be temporarily enjoined.

Kaplan markets its Beacon Hill collection through various stores around the country, each having the exclusive right to display and sell the line. In exchange for this privilege, the retailer undertakes to advertise, exploit and display the furniture, and to sell it under the Beacon Hill trademark. In return, Kaplan agreed to supply each retailer with the furniture required.

Plaintiff, it is conceded, since 1959 spent substantial sums and devoted considerable effort to exploit the Beacon Hill name, at all times holding it out as exclusively its own. For all intents and purposes, Beacon Hill furniture is a Sloane product, so intensive has been its campaign. The name Kaplan has been associated with the line in a few unimportant instances in the 27 years that Beacon Hill has been marketed in the New York area (for 22 years a similar arrangement existed with B. Altman & Co.).

It is estimated that plaintiff spent $100,000 in extensive advertising of the line since 1959. This is nowhere controverted by defendant. Uncontroverted also is the fact that plaintiff is presently in possession of a Beacon Hill inventory

valued at $500,000 retail. This will be seriously de-valued, it is urged, if the relief sought here is not granted. Indeed, already there is evidence to such effect. For instance, relying on announcements by defendants that Beacon Hill furniture will be available in decorator showrooms, an order taken by plaintiff has been cancelled, the purchaser desiring to take advantage of a substantially lower purchase price. That the future sales of its Beacon Hill furniture are likely to suffer seems not a specious argument.

It is conceded that an agreement was reached in 1959. Both parties, however, ask this Court to determine the intent of the agreement by applying the test of "reasonableness" to its terms.

Kaplan asks: "Would I bind myself to plaintiff for the marketing of my furniture, without retaining for myself the unilateral right to terminate the agreement at will?" To answer this, one must keep in mind the factors which prompted Kaplan to use this method of marketing in 1937. In order to be able to market this high priced line of furniture without substantial expense to him, Kaplan gave the name Beacon Hill to established stores throughout the country, relying on the fact that in exchange for a secure and exclusive use of the name, the retailer would expend substantial effort and considerable expense promoting it. It is, therefore, entirely plausible to suppose that plaintiff would not allow Kaplan the right to unilaterally abrogate the agreement.

It is difficult to entertain the thought that plaintiff-retailer would extend itself in this fashion, knowing that the primary asset, the product's exclusivity, could be taken away at the whim of the supplier.

We do not here say that the agreement was terminable on mutual consent. That is for the trier of the facts to determine upon the ultimate resolution of the issues. What we do say is that such an explanation is highly plausible.

It is pertinent to note that in 1959, at the initial conference between the parties, the idea of displaying Beacon Hill furniture in decorator showrooms in New York, simultaneously with its display at Sloane's was discussed. It was promptly dropped, the reason being in dispute.

On March 27, 1964, Kaplan assured plaintiff (through its president) that no action would be taken regarding the sale of the Beacon Hill Collection through a decorator showroom in New York until a full discussion could take place between the parties. On April 4, while plaintiff's president was abroad, he was notified that Kaplan had already agreed with defendant Knapp & Tubbs, Inc. to allow the line to be shown in the latter's showroom. In light of the many years of close relationship, this approach is at least indicative of Kaplan's knowledge that the contract was not unilaterally terminable.

Bearing in mind that the facts at this time must be gathered from affidavits and exhibits alone, and not from scrutiny of the witnesses at close range, the Court is impressed with (a) the affidavit of Irwin A. Schwartz who was party to the original agreement, and (b) the failure of David Kaplan to challenge the effectiveness of Sloane's operations.

Schwartz's affidavit details the manner in which "Beacon Hill Collection" came into existence and how it was handled by Kaplan. Vitally, he unequivocally states that the arrangement made between Kaplan and its distributors was not intended to be terminable at will.

Further, David Kaplan who represented the manufacturer at Sloane's and was at the store daily during a substantial period was unable to support Kaplan's general charges that Sloane's was not effectively selling Beacon Hill furniture.

■ The agreement, concededly made in 1959, is enforceable, notwithstanding its oral nature or uncertainty of termination. Ehrenworth v. George F. Stuhmer & Co., 229 N.Y. 210, 128 N.E. 108 (1920): Mar-Bond Beverage Corp. v. Dublin Distributors, Inc., 9 A.D.2d 951, 195 N.Y.S.2d 730 (1959).

794

As to ownership of the trademark "Beacon Hill": Distributors of products have often been declared the owners of trademarks of the goods they sell, Distillers Brands, Inc. v. American Distilling Co., 26 F.Supp. 988 (S.D.N.Y.1938), regardless of the fact that the manufacturer has registered the mark. E. F. Pritchard Co. v. Consumers Brewing Co., 136 F.2d 512 (6th Cir.1943). The right to use the trademark may very well differ from area to area. Huber Baking Co. v. Stroehmann Bros. Co., 252 F.2d 945 (2d Cir. 1958).

█ The applicability of the various sections of the Federal Trade-Mark Act of 1946 (Lanham Act) to the situation here presents fact questions calling for determination by the trier of the facts. (15 U.S.C. §§ 1055, 1065, 1127).

This Court is fully aware and appreciative of the grave warnings reminding us of the extreme care to be exercised in the granting of the relief sought here. H. M. Chandler Co. v. Penn Paper Products, 88 F.Supp. 753 (S.D.N.Y.1950); F. T. C. v. Sterling Drug, Inc., D.C., 215 F.Supp. 327, aff'd. 317 F.2d 669 (2d Cir.1963).

█ Nevertheless, where, as here, "the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation", and where "irreparable harm is likely to result to plaintiff if *pendente lite* * * * the injunction be denied," the relief will be granted, notwithstanding the fact that plaintiff's right to recover, after trial, is not "absolutely certain, wholly without doubt." Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 743 (2d Cir.1953).

Under all the circumstances, including the likelihood of substantial harm to plaintiff's rights before the matter has gone to trial, this Court is impressed with the imperative necessity of maintaining the status quo until the issues are determined.

Motion is granted. Settle order on three (3) days notice.